755 So.2d 564 (2000)
Joe LIPSEY, Appellant,
v.
Sherry (Haynes) LIPSEY, Appellee.
No. 1999-CA-00052-COA.
Court of Appeals of Mississippi.
February 22, 2000.
*565 Rebecca S. Thompson, Hernando, Attorney for Appellant.
Jimmy McClure, Sardis, Attorney for Appellee.
BEFORE McMILLIN, C.J., BRIDGES, AND PAYNE, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY AND FACTS
¶ 1. Appellant Joe Lipsey (Joe) and Appellee Sherry Haynes Lipsey (Sherry) were divorced in the Desoto County Chancery Court on May 29, 1996. Custody of the Lipseys's one minor child was awarded to Joe, Sherry retaining visitation rights. Sherry was ordered to pay child support to Joe in the amount of $245 per month, Joe was ordered to provide health insurance for the child, and both Joe and Sherry were ordered to split evenly all medical, dental, optical, and pharmaceutical expenses, as well as college expenses and extra curricular expenses. Each party was responsible for his and her own attorney fees stemming from the divorce action.
¶ 2. On March 20, 1998, Sherry filed a petition to modify the divorce decree alleging a material change in circumstances and seeking custody of her son or, in the alternative, joint custody with Joe. On March 23, 1998, Joe responded by filing a motion to cite Sherry for contempt for failure to pay child support; such motion was denied. After a trial on this matter, the chancellor entered an order December 15, 1998, awarding joint custody of the child to both Joe and Sherry. To this decision, Joe now appeals.

ARGUMENT AND DISCUSSION OF THE LAW

STANDARD OF REVIEW
¶ 3. "The standard of review in child custody cases is quite limited. A chancellor must be manifestly wrong, clearly erroneous, or applying an erroneous legal standard in order for this Court to reverse. This Court will affirm decisions of the chancellor, whenever based on credible evidence." Williams v. Williams, 656 So.2d 325, 330 (Miss.1995).
¶ 4. In the present case, we find the chancellor was erroneous in modifying the original child custody decree from Joe's having custody to joint custody being awarded to both Joe and Sherry. Finding such error, we reverse the custody issue. Regarding the issues of testimony concerning the grandmother's care for the child, the contempt charge against Sherry, and the matter of attorney fees, we affirm the chancellor.

ANALYSIS OF THE ISSUES PRESENTED

I. THE CHANCELLOR WAS MANIFESTLY WRONG, CLEARLY ERRONEOUS, AND APPLIED AN ERRONEOUS LEGAL STANDARD IN MODIFYING THE JUDGMENT OF DIVORCE TO CHANGE CUSTODY FROM JOE LIPSEY TO JOINT LEGAL AND PHYSICAL CUSTODY TO BOTH PARTIES.
*566 ¶ 5. Joe Lipsey appeals the chancellor's decision wherein the chancellor changed the original custody order from Joe's retaining physical custody of the Lipsey child to Joe and Sherry's sharing joint custody.
The law with regard to a modification of a decree for child custody is well-settled. There are two basic prerequisites: First, the moving party must prove by a preponderance of the evidence that, since entry of the judgment or decree sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Second, if such an adverse change has been shown, the moving party must show by like evidence that the best interest of the child requires the change of custody.... Yet not every change in circumstances warrants a change in custody. The "totality of the circumstances" must be considered.
Ash v. Ash, 622 So.2d 1264, 1265-66 (Miss. 1993) (citations omitted).
¶ 6. Other Mississippi cases demonstrate the high standard for establishing a material change in circumstances wherein the courts have refused to find such a change warranted altering the original custody order. See Marascalco v. Marascalco, 445 So.2d 1380 (Miss.1984) (granting an alcoholic mother custody of two minor daughters as such illness was not a material change that adversely affected children); Cheek v. Ricker, 431 So.2d 1139 (Miss. 1983) (awarding custody to mother, though the child exhibited mental and emotional problems allegedly due to the mother's relationships with other men while the child was in her care); Smith v. Jones, 654 So.2d 480 (Miss.1995) (stating though child apparently observed on several occasions sexual acts by her mother and stepfather, such did not constitute a change in "totality of circumstances" as to warrant change of custody).
¶ 7. In his opinion, the chancellor gave no reason for modifying custody except for citing the parties' inability to cooperate with one another. In light of the above cases where much more severe acts were found not to constitute material changes in circumstances, we would be remiss to say that the law warranted a change in custody here.
¶ 8. The facts in Touchstone v. Touchstone, 682 So.2d 374 (Miss.1996) are similar to the case sub judice. In Touchstone, the parents shared joint legal custody of their small child. The two parties held severe animosity toward one another and frequently displayed such contention in visitation exchanges with the small child. The father alleged the mother was hostile and contentious in their exchange of the child and petitioned the chancellor for a modification of the custody award. Finding the child to be in good health and happy spirit, the chancellor denied the petition for modification and explained:
Although [the child] has been subjected to some gross unpleasantries between his parents, the record does not remotely suggest that these episodes are characteristic of the overall circumstances in which he lives. Whether these circumstances are likely to remain unchanged in the foreseeable future appears to be entirely dependent upon his parents' ability to control their hostilities toward each other when with the child. The chancellor found that [the child] had not been so adversely affected by his parents' behavior that a change in custody would be in his best interests. The evidence in the record is more a reflection of the parties' animosities toward each other than of either's fitness as parents. Unfortunately, it appears that the child has become a pawn in his parents' games.
Touchstone, 682 So.2d at 379-81. As the chancellor in Touchstone opted not to punish the child for his parents' inability to get along, so too should the Lipsey child not be punished for his parents' tumultuous relationship. The Touchstone chancellor found the young child to be happy and healthy; likewise, the chancellor in the *567 case sub judice found the child to be happy and healthy. Therefore, in accordance with precedent, we will not modify our reasoning as to allow a change in custody where the child has exhibited no adverse impact and is equally cared for by both parents.
¶ 9. In his order of modification, the Desoto County chancellor states "there is a need for a change in the present arrangement... there is no cooperation between the parties and there must be cooperation with each other in the future." This Court does not find lack of cooperation to be a pinnacle that warrants a reconsideration of custody; accordingly, we find the chancellor did commit manifest error in altering the award of custody to the father to joint custody of both parents.
¶ 10. In Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984), the father had custody of the ten year old daughter. Upon a visit to her mother's home, the child exhibited bruises on her body that the mother alleged were the result of abuse by her father. The mother filed for a change of custody based on the fact these bruises exhibited a material change in circumstances that affected the welfare of the child. The court denied the petition and found the chancellor had not committed manifest error in awarding custody to the father. The court also found the evidence inconclusive that the child had been abused, stating this allegation and others that the child was undernourished, unbathed, and not cared for were mere isolated events and did not warrant a reconsideration of custody.
An isolated incident, e.g., an unwarranted striking of a child, does not in and of itself justify a change of custody. Before custody should be changed, the chancellor should find that the overall circumstances in which a child lives have materially changed and are likely to remain materially changed for the foreseeable future.... [I]n the final analysis the best interests and welfare of the child are always our polestar considerations. A change in custody should never be made for the purpose of rewarding one parent or punishing the other. It should be made only where there has been a material change in circumstances adversely affecting the child and where... the chancellor determines that such a change is in the best interests of the child.
Tucker, 453 So.2d at 1297.
¶ 11. In the present case, the testimonies of both Joe and Sherry are basically "mud-slinging" with each naming specific instances where each presumed the child did not receive proper care. Sherry attempts to single out incidents where her three private investigators found Joe had supposedly left the child home alone. The testimony of each of the three private investigators was conclusively rebutted and, as stated before, this singling out of incidents is not grounds to constitute a material change in circumstances. Joe argues about certain visitation exchanges where Sherry antagonized the child into not wanting to go with his father. Once again, as stated in Tucker, these and other such isolated incidents do not constitute a material change, and as the chancellor observed, the child appeared healthy and happy when he was in the care of either Joe or Sherry. The child has suffered no adverse impact.
¶ 12. "It is important that children have as much stability as possible when their parents are divorced. Once the court has determined which parent should have custody of the children, then they should be allowed the stabilizing influence of knowing where home is." Bowden v. Fayard, 355 So.2d 662, 664 (Miss.1978). "We have often held that it is not in the best interest of a small child to be shifted from parent to parent." Case v. Stolpe, 300 So.2d 802, 805 (Miss.1974).
¶ 13. The young boy has suffered enough trauma being passed weekly between his parents due to the modified joint custody order. Finding the best interests of the *568 child to be to reside with one parent and finding precedential case law to support our finding as stated before, we find the chancellor abused his authority in modifying the original custody order absent a material change in circumstances.

II. THE CHANCELLOR WAS MANIFESTLY WRONG AND CLEARLY ERRONEOUS IN ALLOWING IRRELEVANT TESTIMONY INTO EVIDENCE REGARDING JOE'S GRANDMOTHER'S CARE PRIOR TO THE DIVORCE.
¶ 14. Joe complains evidence regarding his mother's care of an elderly grandmother was improperly allowed into evidence. While such was improper, however, we find it apparent that the chancellor gave little or no weight to the testimony regarding supposed neglect in caring for the ninety-seven year old lady who was in the care of Joe's mother at a time when Joe and Sherry were still married. No allegations are made that Joe's mother ever left the Lipsey child alone. Therefore, any argument regarding care of the grandmother was irrelevant and should have been omitted. While the chancellor did not sustain the objection, such consideration is harmless error as the transcript of the trial shows the chancellor gave little, if any, weight to the testimony regarding care of the grandmother.

III. THE CHANCELLOR WAS MANIFESTLY WRONG AND CLEARLY ERRONEOUS, AND APPLIED AN ERRONEOUS LEGAL STANDARD IN FAILING TO FIND SHERRY HAYNES LIPSEY IN CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT AS ORDERED BY THE JUDGMENT FOR DIVORCE.
¶ 15. Joe contends the chancellor erred in not finding Sherry in contempt for failure to timely pay child support on several different occasions and for writing child support checks when she had insufficient funds in her bank account.
¶ 16. "The purpose of civil contempt is to enforce or coerce obedience to the orders of the court. Expressed another way, a decree finding a person in civil contempt resembles an injunction and seeks to force a party to act or cease to act in a particular manner. Whether a party is in contempt is left to the Chancellor's substantial discretion." Lahmann v. Hallmon, 722 So.2d 614(¶ 19) (Miss.1998).
¶ 17. Sherry was late on several payments, but at the time of the trial she was not past due on any payment obligations. Therefore, civil contempt was not a proper recourse for the chancellor to take as there was no overdue payment Sherry need be forced to pay.

IV. THE CHANCELLOR WAS MANIFESTLY WRONG AND CLEARLY ERRONEOUS IN FAILING TO GRANT ATTORNEY FEES TO JOE LIPSEY IN THIS MATTER.
¶ 18. "An award of attorney's fees in a contempt case is proper ... and the award of fees is largely entrusted to the sound discretion of the chancellor." Newell v. Hinton, 556 So.2d 1037, 1043 (Miss. 1990). As previously stated, there was no ground for finding Sherry in contempt; therefore, attorney fees cannot be awarded to Joe on this basis.
¶ 19. Concerning other reasons for awarding attorney fees, "[t]he matter of determining attorney's fees in domestic cases is largely entrusted to the chancellor's discretion." Formigoni v. Formigoni, 733 So.2d 868(¶ 5) (Miss.Ct.App.1999). The chancellor heard evidence concerning both Joe and Sherry's employment and financial status and chose not to award attorney fees in this matter. We respect his decision and find no cause to reverse and award attorney fees to either party.

CONCLUSION
¶ 20. The decision of the chancellor should be reversed with regard to the child custody issue and affirmed on all remaining issues for the reasons cited herein.
*569 ¶ 21. THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS REVERSED AND RENDERED IN PART AND AFFIRMED IN PART. THREE-FOURTHS OF THE COST OF THIS APPEAL IS ASSESSED TO THE APPELLANT, ONE-FOURTH OF THE COST OF THIS APPEAL IS ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, AND THOMAS, JJ., CONCUR.