830 So.2d 651 (2002)
Kelly R. Faris JERNIGAN, Appellant,
v.
Jay L. JERNIGAN, Appellee.
No. 2000-CA-01121-COA.
Court of Appeals of Mississippi.
March 5, 2002.
Rehearing Denied June 4, 2002.
Certiorari Denied November 14, 2002.
H.D. Granberry III, Jackson, S. Christopher Farris, Hattiesburg, attorney for appellant.
Anthony Sakalarios, Hattiesburg, attorney for appellee.
*652 Before SOUTHWICK, P.J., LEE, and CHANDLER, JJ.
LEE, J., for the court.
¶ 1. This case arises from a chancellor's decision to modify child custody.[1] The parties herein, Jay Jernigan and Kelly Jernigan Isom (she remarried in 1999), were married in March 1993 and their daughter, Sophie, was born in December of that same year. Jay and Kelly separated in April 1994 and were finally granted a divorce in January 1995. Primary custody of their baby daughter, Sophie, was awarded to Kelly. In September 1995, Jay filed a motion seeking modification of the visitation schedule and seeking the court's enforcement of certain provisions in the previous agreement with regard to Kelly's allowing the child to talk on the telephone with her father and concerning Kelly's continued failure to advise Jay of the child's health and well-being. The chancellor granted the requests in Jay's petition for modification. In November 1998, Jay again filed a petition for modification, this time seeking a change in Sophie's custody from Kelly to himself. Attorney Ray Price was appointed as guardian ad litem on Sophie's behalf, and professional counselor Paul Davey was called upon to evaluate the circumstances and to make a recommendation concerning the child's best interests. In May 1999, the chancellor temporarily reversed primary custody of Sophie until trial, which occurred in January 2000. In May 2000, the chancellor entered an order permanently reversing primary custody of Sophie from Kelly to Jay. Kelly now appeals the final order; we find no error and affirm.

DISCUSSION OF THE ISSUE
I. DID THE CHANCELLOR ERR IN MODIFYING CHILD CUSTODY?
¶ 2. The only issue raised on appeal concerns the chancellor's decision to modify custody of Sophie Jernigan from her mother, Kelly, to her father, Jay. "The standard of review in child custody cases is quite limited. A chancellor must be manifestly wrong, clearly erroneous, or applying an erroneous legal standard in order for this Court to reverse. This Court will affirm decisions of the chancellor, whenever based on credible evidence." Lipsey v. Lipsey, 755 So.2d 564(¶ 3) (Miss.Ct.App. 2000).
¶ 3. The circumstances of this case were thoroughly explained at the trial through testimonies and evidence presented. Without restating all the details of this couple's history since their divorce, we simply look to the circumstances under which the chancellor modified custody from Kelly to Jay. In his order dated May 23, 2000, the chancellor stated that the following findings cumulatively constituted a material change: Kelly had made allegations in at least three jurisdictions that Sophie had been sexually abused by her father, though no testimony or medical evidence was presented to substantiate such accusations; Kelly moved continuously after the divorce, living in at least five different homes during the seven years after the divorce; Kelly misrepresented her marital status to the court, telling that she was married at a time when she actually was not; and Kelly also failed to provide complete reports to her expert, Dr. Criss Lott. Dr. Lott testified that had he been privy to all the information and not just the information Kelly provided, he likely would have changed his opinion. *653 Finding that the totality of these acts on Kelly's part amounted to a material change, the chancellor looked to the expert opinions and to the guardian ad litem's report in reaching his conclusion that an adverse effect had resulted to the child. He then conducted a thorough analysis and application of the factors described in Albright v. Albright, 437 So.2d 1003 (Miss. 1983), and found that custody should be transferred to Jay.
¶ 4. Kelly cites Touchstone v. Touchstone, 682 So.2d 374 (Miss.1996), as a factually similar case to the present situation. In Touchstone, the parents shared custody, and their visitation exchanges included "vicious, profanity-laden accusations and insults between the parties." Touchstone, 682 So.2d at 377. Additionally, the mother was shown to have coerced the child into telling social workers that his father had sexually abused him, though the claims were not substantiated with medical evidence or testimony. The mother also moved out of state with the child and failed to abide by the visitation guidelines set by the court. The supreme court reviewed the evidence and circumstances presented and affirmed the chancellor's finding that although the child had witnessed the disdain his parents held for one another, there was no evidence that such episodes were characteristic of the overall circumstances in which the child lived; thus, the chancellor declined to modify custody, having found no adverse impact. Touchstone, 682 So.2d at 379.
¶ 5. In the present case, as in Touchstone, Kelly has not provided a stable home environment for the child. As described in the record, after the divorce Kelly moved several times, she failed to maintain stable employment, she promoted the idea that Jay had sexually abused the child when no medical evidence existed to support such allegation, she lived out of wedlock with her current husband during the time Sophie was in her custody, and she failed to cooperate with the visitation order of the court. Though quite similar to the Touchstone case, we find the present case to be somewhat distinguishable. In addition to previously cited accounts of Kelly's behavior, we note Kelly's inclination to make misrepresentations to the court and to the social service agencies concerning her situation, her failure to provide complete copies of reports from various state agencies concerning her allegations of abuse, and her outward manifestation of disdain for Jay, all of which combine to show that she was willing to get custody of her child at virtually any cost. The guardian ad litem stated in his report, "I believe that [Kelly's] hate for Jay clouded her judgment to such an extent that she was willing to sacrifice the mental health of her child."
¶ 6. Psychiatric counselor Paul Davey, who conducted an extensive evaluation of the child, and both parents, and the guardian ad litem, Ray Price, who attested to spending more than one hundred hours on this case, both testified that Sophie would suffer adverse impacts in the future were she to remain in her mother's custody. Davey noted in his evaluation that Sophie was continuously being coaxed by her mother to dislike her father and that Kelly tried to make Sophie believe her father was touching her in improper ways. Price noted that Kelly's inclination to misrepresent the facts to authorities and her constant accusations of abuse on Jay's part would have a damaging effect on Sophie. In the conclusion to his report, Price stated:
Although Sophie has not yet evidenced a great deal of difficulty from this battle over her, I believe it is obvious that the fight over her has impacted her and that Sophie should undergo regular counseling sessions with a qualified, neutral child psychologist in order to determine the full effect of the custody battle on *654 her and give her an opportunity to discuss her problems relating to the custody issues without either parent being in control of that situation.
The chancellor was given the opportunity to hear the testimonies of both Davey and Price, as well as hear from Jay and Kelly, thus providing opportunity to evaluate the credibility of each witness. The chancellor was also privy to Price's and Davey's reports, both of which recommended that custody be vested with Jay. Absent any showing of abuse of discretion, we are without power to reverse the chancellor's decision. Having reviewed the record and briefs, we find no abuse and, thus, affirm the chancellor's decision to modify custody of Sophie from Kelly to Jay.
¶ 7. THE JUDGMENT OF THE FORREST COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.
NOTES
[1] The sitting Forrest County chancellors all recused themselves since the matter involved an attorney who practices and resides in their district; the Mississippi Supreme Court specially appointed Honorable Larry Buffington, chancellor for District 13, to hear this matter.