864 So.2d 999 (2004)
Philip Edward WITTERS, Appellant,
v.
Tara L. WITTERS, Appellee.
No. 2002-CA-00681-COA.
Court of Appeals of Mississippi.
January 27, 2004.
*1000 Travis T. Vance, Vicksburg, attorney for appellant.
William R. Wright, Jackson, W. Benton Gregg, attorneys for appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. Phillip Edward Witters and Tara L. Witters were divorced in August 2001. Thereafter, Tara filed a petition to modify the visitation schedule and a petition for citation of contempt against Phillip alleging failure to pay child support and mortgage payments. A final judgment on all outstanding motions was entered in March 2002. Aggrieved by the chancellor's decision, Phillip has appealed, asserting that the court erred: (1) in placing restrictions on his visitation with his child in the absence of a finding that these restrictions were necessary to avoid harm to the child, (2) in finding that the method of transportation of the minor child for the visitation schedule was not working, (3) in finding him in contempt of court, and (4) in ordering him to pay Tara $500 in attorney fees plus court costs in the contempt action.
¶ 2. We find merit in issues one and two; therefore, we reverse and render in part and affirm in part.

FACTS
¶ 3. Phillip Edward Witters and Tara L. Witters were divorced on the ground of irreconcilable differences in August 2001. Phillip was ordered to pay child support in the amount of $566 per month and mortgage payments on the marital home in the amount of $1039 per month. The chancellor granted Phillip and Tara joint legal custody of the couple's two-year-old child Juliana, with Tara having physical custody and Phillip having reasonable visitation. Since Tara and the child had moved to Michigan prior to the divorce, and Phillip continued to live in Mississippi, the parties agreed to a seven-day period of monthly visitation that would remain in effect until Juliana entered kindergarten, at which time the visitation would then become alternate weekends. The relevant visitation provision provided that Phillip would have visitation with the child beginning at 9:00 a.m. on the first Saturday of each month and continuing until 9:00 a.m. on the following Saturday. Phillip agreed to give Tara at least seven days' written notice when he intended not to exercise his visitation. He also agreed to remain with Juliana during all visitation periods. Both parents agreed to notify each other if the child was taken out of state during periods of custody and visitation.
*1001 ¶ 4. Tara and Juliana moved to Michigan in November of 2000. Phillip started receiving weekend visitation in March 2001 pursuant to a temporary court order and traveled to Michigan every other weekend to visit with the child from 9:00 a.m. Saturday morning to 4:00 p.m. Sunday afternoon. Phillip testified that he never missed a scheduled visitation. After the judgment of divorce was entered, Phillip began exercising his seven-day monthly visitation which had been awarded to him in the judgment of divorce. During Phillip's September 2001 visit, he picked up Juliana and informed Tara that he planned to take the child to Mississippi instead of remaining in Michigan as he had done on prior occasions. Phillip testified that since he did not know that he would be driving back to Mississippi with the child to spend his visitation week, he only gave Tara fifteen minutes' notice. Phillip stated that he and the child drove instead of flying since airline flights were cancelled throughout the United States due to the terrorist attacks of September 11. In October, Phillip again drove to Michigan to pick up his daughter and then drove back to Mississippi where he exercised his one week visitation with the child. On both occasions, he returned the child to her mother by airplane. In November, Phillip exercised his visitation by remaining in Michigan with the child at his sister's home. However, in December and the following January, Phillip again exercised his seven-day monthly visitation by driving to Michigan to pick up Juliana and returning the child by car at the end of the visitation period.
¶ 5. In response, Tara filed a motion for injunctive relief seeking to temporarily stop Phillip from driving back and forth from Michigan to Mississippi with the child. She then filed a petition for modification requesting that the court modify the visitation provision in the judgment of divorce. Tara alleged that Phillip's actions were in willful disregard for Juliana's safety and welfare and that he had created a material change in circumstances that was not in the child's best interest. The court began hearing testimony on the two motions on October 19, but the hearing was continued until a later date.[1] Although resolution of the motions for injunctive relief and modification were still pending in Mississippi, Tara filed an emergency motion with the court in Michigan on November 1, alleging child abuse and neglect of Juliana during Phillip's visitation with the child. The Michigan court refused to exercise jurisdiction over the matter. The hearing in Mississippi on the motion for injunctive relief[2] was resumed on November 7.
¶ 6. On November 26, Tara filed a petition for citation of contempt, alleging that Phillip had failed to pay court-ordered child support and mortgage payments. Phillip answered and asserted that since the entering of the judgment of divorce, he had been required to spend large sums of money as a result of appearing in court on numerous occasions to defend his exercise of visitation. He consequently asked the court to consider this financial burden placed on him. On December 19, the court *1002 again resumed hearing testimony on Tara's motions for modification and contempt. After yet another continuance, the trial was finally concluded on January 31, 2002.
¶ 7. At the conclusion of the evidence, the chancellor found that the visitation schedule should be modified since the current method of transportation was not working. The chancellor further found that it was not in the child's best interest to be transported by automobile by one adult from Michigan to Mississippi on a monthly basis and ordered that more than one adult be in the automobile when traveling with the child between the two states. The chancellor also found Phillip in contempt for failure to timely pay his child support and mortgage payments. Tara was awarded $500 in attorney fees plus court costs because the court found that she did not have the financial ability to pay her attorney.
¶ 8. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

Standard of Review
¶ 9. This Court's scope of review in domestic relation cases is strictly limited. Brawdy v. Howell, 841 So.2d 1175, 1178(¶ 8) (Miss.Ct.App.2003). We will not disturb the findings of a chancellor unless we find an abuse of discretion, an erroneous application of law, or a manifest error. Id. Thus, if we find substantial evidence in the record to support the chancellor's findings, we will not reverse. Id.

(1) Restriction of Visitation
¶ 10. Phillip first argues that the court erred in placing restrictions on his visitation with Juliana without a finding that these restrictions were necessary to avoid harm to the child. He maintains that the court erred further in finding that the method of transportation of the child was not working. For the sake of clarity, issues one and two will be treated as a single issue.
¶ 11. The law is well settled that a chancellor has great discretion in making a determination of what is in the best interest of the child as it relates to visitation issues. Ellis v. Ellis, 840 So.2d 806, 812(¶ 24) (Miss.Ct.App.2003). Phillip correctly asserts that this Court has recognized that both parents must be allowed an opportunity to maintain a healthy relationship with their child. Porter v. Porter, 766 So.2d 55, 58(¶ 13) (Miss.Ct.App.2000). Tara properly advances that in order to modify a visitation order, it must be shown that the prior decree for visitation is not working, and that a modification is in the best interest of the child. Ellis at 812(¶ 25). A material change in circumstance is not required. Cox v. Moulds, 490 So.2d 866, 869 (Miss.1986).
¶ 12. Phillip cites Mord v. Peters, 571 So.2d 981 (Miss.1990), and the Virginia case of Eichelberger v. Eichelberger, 2 Va. App. 409, 413, 345 S.E.2d 10, 12 (1986), in support of his position. In Mord, a mother sought to prohibit her former husband from allowing the parties' children to fly in his private airplane and take flying lessons. Similarly, the mother in Eichelberger sought to prohibit her ex-husband from allowing their son to operate a "mini-bike." In both cases, the courts held that "in the absence of a finding that the activities at issue presented a danger to the children, the custodial parents could not restrict visitation activities between the non-custodial parent and child."
¶ 13. The case at hand is analogous to Eichelberger and Mord. Here, Tara seeks to prevent Phillip from driving back and *1003 forth from Michigan to Mississippi with Juliana. She testified that it was dangerous for Phillip to drive to and from Michigan to Mississippi with the child because of the possibility of being in an accident due to sleep deprivation. Tara also expressed concern that Phillip's stopping for less than half an hour during the trip was not enough time to allow the child freedom of movement. Tara further testified that the visitation schedule was not working because "Phillip was driving the child to Mississippi, putting her in daycare while there, and ruining her schedule so that when Juliana came home, she was exhausted, angry, clingy, and crying all the time." Tara however stated that she did not have any proof that the traveling was hurting the child.
¶ 14. During his testimony, Phillip stated that the visitation in Mississippi gave him quality one on one time needed to develop a loving relationship with his daughter. He maintained that he wanted to exercise his visitation with Juliana in Mississippi because it was her home and this would show the child that he loved and did not leave her. Phillip stated that he and the child had a wonderful time on the trip and it was a beautiful bonding experience. He testified that the child was restrained throughout the entire time he drove, and she slept a third or greater of the trip. Phillip testified that when Juliana was not sleeping, he and the child sang songs, read books and colored, and stopped at rest areas and McDonald's to have picnics. He further stated that he would have stopped the car and gotten a hotel room if he felt that there was any time he could not drive due to sleepiness. Phillip acknowledged that he remained awake while driving by drinking Mountain Dew and coffee, and eating licorice and doughnuts.
¶ 15. Dr. Wood Hiatt, a medical doctor and psychiatrist, also testified on behalf of Phillip. He stated that he saw no evidence that sleep deprivation had affected Phillip's ability to travel or that travel by car was harmful to the child. Dr. Hiatt also testified that the seven-day visitation period was working, and it was in the child's best interest to leave the visitation schedule as it was.
¶ 16. We find that the chancellor's determination that another adult be in the car when transporting Juliana back and forth between Michigan and Mississippi was manifestly erroneous. Phillip properly advances that unless compelling reasons are shown, the non-custodial parent during permitted visits with the child should have essentially unfettered discretion regarding the "place and manner" of the visit. Porter, 766 So.2d at 58(¶ 13) (Miss.2000). We further find that nothing in the record suggests that the visitation schedule was not working, and thus no compelling reasons exist that would warrant placing restrictions on Phillip's visitations with his child. The evidence before us does not suggest that driving back and forth with Juliana in a car creates any potential hazard to the child. For the foregoing reasons, the chancellor's ruling on the issue of modification of visitation is reversed and rendered.

(2) Contempt of Court
¶ 17. Phillip next asserts that the court erred in finding him in contempt of court. He concedes that he had been late in making some of his child support and mortgage payments, but this was due to a financial burden placed on him in defending his right to exercise his visitation with his child.
¶ 18. The purpose of civil contempt is to enforce or coerce obedience to the orders of the court. Lahmann v. *1004 Hallmon, 722 So.2d 614, 620(¶ 19) (Miss. 1998). It is well-settled law that contempt matters are committed to the substantial discretion of the chancellor. Id. This Court will not reverse a contempt citation where the chancellor's findings are supported by substantial credible evidence. Varner v. Varner, 666 So.2d 493, 496 (Miss.1995).
¶ 19. Phillip cites Lipsey v. Lipsey, 755 So.2d 564 (Miss.Ct.App.2000) in support of his argument. In Lipsey, a former wife was late on several child support payments, but at the time of trial she was not past-due on any payment obligations. Id at 568(¶ 17). This Court affirmed the chancellor's finding that the ex-wife was not in contempt, reasoning that "civil contempt was not a proper recourse for the chancellor to take as there was no overdue payment Sherry need be forced to pay." Id.
¶ 20. The case sub judice can be distinguished. Although Phillip was current on his child support and mortgage payments at the conclusion of the hearing in January 2002, he was not current at the conclusion of the past hearings or when the petition for citation of contempt was filed. While testifying during the hearing held in December, Phillip admitted that the September child support payment was late, and the check subsequently bounced; that the October child support payment was late; that the November child support payment was late and had not been paid at the time of the November hearing, although it was later paid on November 27th; and the December payment was late although it was paid on December 19, the day of the hearing. Further, the following exchange occurred on cross examination of Phillip:
Q: Now, under the Judgment of Divorce, you're required to make the mortgage payment on the former marital residence; are you not?
A: Yes, I am.
Q: And the amount of money you're supposed to pay every month is $1,039.00; is that correct?
A: That's correct.
Q: And as of today, you are two payments behind; is that correct?
A: I owe DecemberI owe December's payment.
Q: When did you make the November payment?
A: I believe it was last week.
Q: And it was extremely late, wasn't it?
A: Yes, it was late.
¶ 21. Further, Tara testified that Phillip has been as late as two months in paying the mortgage, and pointed out that since her name is still on the mortgage, her credit is affected when Phillip is late with the payments. It is clear from the record that there was ample testimony and evidence to support the chancellor's finding that Phillip was in contempt for failure to timely pay his child support and mortgage payments. A review of the record reveals the chancellor did not abuse her discretion. Therefore, this issue is without merit.

(3) Attorney Fees
¶ 22. Phillip finally asserts that the court erred in awarding attorney fees and court costs to Tara. Again he cites Lipsey v. Lipsey to support his proposition. In Lipsey, this Court affirmed a chancellor's finding that the husband was not entitled to attorney fees. The Court reasoned that "there were no grounds for finding Sherry in contempt; therefore, attorney fees cannot be awarded to Joe on this basis." Id. (¶ 18). This case is inapplicable to this issue since we affirmed the chancellor's finding that Phillip was in contempt. Further, our supreme court has consistently held that when the court denies a spouse's petition for contempt, no *1005 award of attorney fees is warranted. Hallmon, 722 So.2d at 623(¶ 34). Since Tara was successful on her motion for contempt, it follows that she is eligible for an award of attorney fees. A review of the record indicates that the chancellor did not abuse her discretion; therefore, this issue is without merit.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS REVERSED AND RENDERED ON THE ISSUE OF MODIFICATION OF VISITATION; AND AFFIRMED ON THE CONTEMPT AND ATTORNEY FEES ISSUES. COSTS OF THIS APPEAL ARE ASSESSED ONE THIRD TO THE APPELLEE AND TWO THIRDS TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. KING, P.J., CONCURS IN RESULT ONLY.
NOTES
[1] The hearing from which Phillip bases his appeal was held on four different days. The court heard testimony on October 10, November 7, December 19, 2001, and on January 7, 2002.
[2] Tara apparently later abandoned her motion for injunctive relief. An agreed order was entered on November 7 whereby the parties agreed that Tara's petition for injunctive relief should be vacated. The parties stipulated that the court would consider all evidence previously presented at the October 10 and November 7 hearings in considering Tara's petition for modification.