# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-01189-COA

JACK H. WILSON, JR.                                                            APPELLANT

v.

JOY ELIZABETH STEWART                                                          APPELLEE

DATE OF JUDGMENT:                06/13/2013
TRIAL JUDGE:                     HON. J. DEWAYNE THOMAS
COURT FROM WHICH APPEALED:       HINDS COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:         MICHAEL J. MALOUF
                                 MELISSA A. MALOUF
                                 ROBERT EUGENE JONES II
ATTORNEY FOR APPELLEE:           JENNIFER LEIGH BOYDSTON
NATURE OF THE CASE:              CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:         APPELLEE FOUND IN CONTEMPT AND
                                 ORDERED TO PAY APPELLANT'S
                                 ATTORNEY'S FEES AND CHILD-
                                 SUPPORT ARREARAGES WITH INTEREST
DISPOSITION:                     AFFIRMED: 12/09/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

BEFORE IRVING, P.J., FAIR AND JAMES, JJ.

FAIR, J., FOR THE COURT:

¶1.    On June 13, 2012, the Chancery Court of Hinds County ruled that Jack Wilson (Jay) owed his ex-wife, Joy Stewart, $197,802.74 in past-due child support and attorney's fees. The court also found Jay was in willful contempt of court. And he ordered Jay to pay the master appointed in the case $2,830. Jay appeals, claiming the chancellor erred in: (1) calculating Jay's monthly child-support obligation, (2) ruling on Joy's petition for contempt, (3) finding Jay in willful contempt, (4) ordering Jay to continue paying college expenses, (5)

ordering Jay to pay Joy's attorney's fees and a majority of the master's fees. Finding no error, we affirm the decision of the chancellor.

## FACTS

¶2.     Jay and Joy divorced in 2003. They have three children — Madison, Anabel, and Henley. In the original divorce decree, Joy received sole physical custody of the three children, and Jay agreed to pay $1,700 a month in child support. Jay also agreed to pay the children's private-school tuition, college expenses, half the costs of extracurricular activities, and half of any uncovered health bills, and he agreed to provide the children with health and hospitalization insurance.

¶3.     As of December 14, 2004, Jay was found in contempt of court for failing to pay $9,052 in spousal support and child support. On March 7, 2005, Jay and Joy entered into an agreed order modifying their judgment of divorce. The agreement stated that Jay would pay arrearages in the amount of $9,052, plus attorney's fees of $1,000, in two separate, equally divided installments. The first installment was due on March 1, 2005, and the second installment was due on April 1, 2005. The agreement further provided for an agreed reduction of his child-support obligation to $800 per month. Paragraph 11 of the agreement specifically provided:

> The parties recognize that Jay's agreement to timely pay the lesser amounts of child support and noted arrearages is the essence of Joy's willingness to agree to a downward modification of child support . . . . [S]hould Jay fail to timely pay either or both installments of back child support, . . . he shall be in intentional, contumacious contempt of court, . . . [and] the modification of child support shall be null and void.

2

All other pertinent provisions of the original decree remained in effect.

¶4.     On July 20, 2011, Joy filed an amended petition for contempt of court and other relief, claiming Jay had not paid the $10,052 specified in the 2005 modification order, nor had he paid any child support at all after entry of that order. She further claimed that, as a result, Jay was still required to pay $1,700 per month in child support and owed at least $104,655.57 in past-due child support. Joy also claimed that Jay had failed to pay any of the children's tuition or college expenses. The court appointed a master by agreed order on April 25, 2012. There was no hearing conducted; instead, both parties agreed to submit testimony by affidavit. In accordance with Mississippi Rule of Civil Procedure 53(g)(3), the parties stipulated that the master's findings of fact would be final.

¶5.     The master filed his report on November 21, 2012. He found that Jay failed to meet the requirements of the modification order and consequently never received the reduction in child support from $1,700 to $800. He also found Jay paid no child support at all after the entry of the agreed order for reduction from $1,700 to $800. As a result, he calculated that Jay owed $1,700 per month (22% of his previously agreed upon adjusted gross income for the three children) from April 2005 to May 2009, when Madison was emancipated. Jay's child support was recalculated at $1,545 per month (20% of his adjusted gross income for the two remaining minors) from June 2009 to April 2012, the date of Anabel's emancipation. The master then reduced Jay's child-support obligation to $1,081.78 (14% of his adjusted gross income for Henley, who was still a minor) beginning in May 2012. After crediting Jay for several miscellaneous payments, the master determined that Jay owed Joy $132,255.90,

3

plus interest, recognizing post-judgment interest at 6% per annum. This gross amount included child support, attorney's fees, and his fee as the appointed master. He also found that Jay's obligation to pay for college expenses should effectively terminate upon emancipation. The master recognized that since Madison was married, she was already emancipated and that Anabel was emancipated at the age of twenty-one. Therefore, the master found that Jay was only responsible for Henley's college expenses, but only until he reached age twenty-one. Jay and Joy both timely filed objections to the master's report.

¶6.     On December 18, 2012, the chancellor entered an order adopting in part and reversing in part the master's report. The chancellor affirmed the master's calculation of Jay's past-due child support. But he also awarded Joy pre-judgment interest for Jay's past-due payments and reversed the master's finding on post-judgment interest, changing the interest rate from the 6% to 4% per annum. Additionally, the chancellor found that the provision from the original divorce decree detailing Jay's payment of college expenses should be construed to extend by contractual agreement to the expenses "post-majority." As a result, the chancellor ordered Jay to continue to pay full college support for Anabel and Henley until they received an undergraduate degree or reached the age of twenty-three, whichever occurred first. The court determined that Jay owed Joy, through the date of the court's order, $149,613.82, a total which included accrued interest. Finally, the court required Jay to appear on February 27, 2013, to determine whether Jay was in compliance with the court's order; Jay's failure to appear would result in immediate incarceration.

¶7.     Jay filed a motion for reconsideration on December 28, 2012. The court denied his

4

motion. On February 11, 2013, Joy filed a second amended petition for contempt, claiming Jay failed to make any of the scheduled payments specified in the court's December 2012 order. Further, Joy stated Jay had made no payments towards the children's college expenses. On June 13, 2013, the court issued its final judgment, awarding Joy a judgment against Jay in the amount of $197,802.74. This amount included all pre- and post-judgment interest and $29,062.42 for Joy's attorney's fees in pursuit of her contempt action. The court also held Jay in willful contempt, suspending his incarceration as long as he made his timely payments to Joy and payment to the master in the amount of $2,830. Jay appealed.

## STANDARD OF REVIEW

¶8. This Court's scope of review in domestic-relations cases is limited. *R.K. v. J.K.,* 946 So. 2d 764, 772 (¶17) (Miss. 2007). We "will not disturb a chancellor's judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous, or [applied] an erroneous legal standard[.]" *Chapel v. Chapel,* 876 So. 2d 290, 292 (¶8) (Miss. 2004) (citing *Townsend v. Townsend*, 859 So. 2d 370, 371-72 (¶7) (Miss. 2003)).

## DISCUSSION

### 1. Modification Order

¶9. "Decisions regarding modification of child-support provisions of a divorce decree are left to a chancery court's discretion, and will only be disturbed if in manifest error." *Bosarge v. Bosarge*, 879 So. 2d 515, 518 (¶7) (Miss. Ct. App. 2004).

¶10. Jay raises several issues regarding the chancellor's ruling on Jay's child-support

arrearages. Jay first argues that he substantially complied with the 2005 modification order by paying $9,000 of the required $9,052, entitling him to the downward modification provided in the order. He secondly argues that he should have received a credit towards his March 2005 payment for one of his children's cellular phone bills in the amount of $58.55. Jay claims that, had the chancellor credited the bill payment towards his arrearages, he would have satisfied the payment specified in the modification order, thereby justifying the downward modification in child support. Finally, Jay claims that he is entitled to a credit in his child-support arrearage for the periods Henley lived with him.

¶11.   Mississippi Rule of Civil Procedure 53(g)(2) provides that where a master is appointed, the trial court "shall accept the master's findings of fact unless manifestly wrong." Further, the trial court may adopt the master's report, modify the report, reject the report in whole or in part, receive further evidence, or return the report to the master with supplementary instructions. *See* M.R.C.P. 53(g)(2); *Trovato v. Trovato,* 649 So. 2d 815, 820 (Miss. 1995). The review of the master's report shall be limited to questions of law when the parties have stipulated that the master's findings of fact shall be final. *Trovato*, 649 So. 2d at 820. Here, the parties made that stipulation. Jay and Joy disagreed on how much money Jay was required to pay under the terms of the modification order. After reviewing the evidence and testimony, the master found that the modification order required Jay to pay $10,052 in installments in March and April 2005. He was also ordered to pay his continuing obligation for monthly support, but in the reduced amount of $800 for those two months and those following. He found that Jay did not satisfy the requirement he had agreed to for

6

downward modification and therefore was obligated to pay $1,700 per month. The chancellor adopted the master's findings in accordance with Rule 53(g)(2).

¶12. Notwithstanding the stipulation of the parties regarding finality of the referee's determinations, whether or not certain payments should be credited to Jay against his child-support arrearage remains within the chancellor's discretion. *See Crow v. Crow,* 622 So. 2d 1226, 1231 (Miss. 1993) (stating that the amount of child-support arrearage is a question of fact and is subject to our limited standard of review). The trial court's determination is one of sufficiency of evidence to support the master's findings of fact. There is ample evidence in the record, most importantly the modification order's contractual provisions, establishing Jay's financial duties. The modification order, an agreed order having contractual dimensions, specifically states that "Jay's agreement to timely pay the lesser amounts of child support and noted arrearages is the essence of Joy's willingness to agree to a downward modification of child support."

¶13. Further, as the noncustodial parent, Jay was required to provide satisfactory evidence to show he was entitled to a credit for the time period Henley lived with him. *See Smith v. Smith*, 20 So. 3d 670, 674 (¶13) (Miss. 2009). In conducting his review and making his report to the chancellor, the master reviewed all the evidence provided "in an effort to find anything that could be reasonably credited in favor of Jay." The master did not discuss if or when Henley resided with Jay or any potential credits as a result thereof; so Jay received no credit for any alleged support provided to Henley. The chancellor affirmed the master's finding on credits owed to Jay. On appeal, Jay provides no citation to the record to support

7

his argument that the chancellor erred. "This Court is not obligated to scour the record to find support for assertions of fact in briefs . . . ." *Jordan v. State*, 2013-KA-00183-COA, 2014 WL 4197345, at *2 (¶9) (Miss. Ct. App. 2014) (citation omitted). Following our standard of review, we do not find the chancellor's determination to be manifestly wrong or clearly erroneous, or that the chancellor applied an incorrect legal standard. So we will not disturb the chancellor's finding.

### 2. Estoppel

¶14. Jay also argues that Joy is equitably estopped from bringing the contempt action. This Court has found equitable estoppel to be inappropriate in child-support matters. *Durr v. Durr*, 912 So. 2d 1033, 1038 (¶14) (Miss. Ct. App. 2005). "[C]hild support is for the benefit of the minor. The custodial parent is only a conduit for the support. Therefore, it follows that no action or inaction on the part of the custodial parent can relieve the defaulting parent of that parent's obligation to pay support." *Id*. This argument is without merit.

### 3. Willful Contempt

¶15. Jay claims the court erred in finding him in contempt. "This Court will not reverse a contempt citation where the chancellor's findings are supported by substantial credible evidence." *Witters v. Witters*, 864 So. 2d 999, 1004 (¶18) (Miss. Ct. App. 2004) (citing *Varner v. Varner,* 666 So. 2d 493, 496 (Miss. 1995)).

¶16. "A defendant may avoid a judgment of contempt by establishing that he is without the present ability to discharge his obligations. However, if the contemnor raises inability to pay as a defense, the burden is on him to show this with particularity, not just in general terms."

8

*Varner,* 666 So. 2d at 496 (internal citation omitted). In *McIntosh v. Department of Human Services*, 886 So. 2d 721, 724-25 (¶11) (Miss. 2004) (internal citations omitted), our supreme court held:

> In contempt actions involving unpaid child support, a prima facie case of contempt has been established when the party entitled to receive support introduces evidence that the party required to pay the support has failed to do so. At this point, the burden shifts to the paying party to show an inability to pay or other defense; this proof must be clear and convincing and rise above a simple state of doubtfulness.

Here, the master found Jay in contempt. He reasoned that, based on the evidence presented, Jay had not shown an inability to pay. The court ordered Jay to pay child support in reduced monthly installments. He paid nothing. In his motion for reconsideration, Jay merely stated that he had no substantial assets and a large amount of debt. On the contrary, Anabel's and Henley's affidavits indicated that their father had significant assets. Henley stated that his father told him he sold his business for over one-million dollars in October 2010. Anabel stated that Jay enjoyed a "pretty good lifestyle," driving a Mercedes, Ford pickup truck, and Range Rover. She also said Jay had moved into a new house, with his new wife, in an upscale area of Madison, Mississippi; she described the house as "very large, with exposed cedar beams, big screen televisions, and a large fireplace." On February 12, 2013, the court held a hearing on Jay's motion, as well as Joy's petition for contempt. Jay admitted he had failed to make any payments ordered by the court. He raised inability to pay as a defense, but he offered no evidence to support his claim. Consequently, the court found that Jay did not prove his defense with any particularity and therefore had not met his burden by clear and

9

convincing evidence. The court further reasoned that Jay's "general allegations" were insufficient to avoid contempt. *See McIntosh*, 886 So. 2d at 725 (¶14). We find the chancellor's ruling to be supported by substantial credible evidence, and therefore affirm his decision.[1]

### 4.    Post-Majority College Expenses

¶17.    Jay claims that the court should have terminated his obligation to pay Anabel's and Henley's college expenses at twenty-one, the age of emancipation. Jay also argues that the court should have terminated his obligation based on Henley's poor academic performance. In support of his argument, Jay cites *Nichols v. Tedder*, 547 So. 2d 766, 770 (Miss. 1989), which states that a parent has no legal duty to support a child once that child is emancipated. However, that duty may be extended to post-emancipation care by agreement, whether it be a separate contract or included in the divorce decree. *Crow*, 622 So. 2d at 1230.

¶18.    Here, the provision pertaining to the payment of college expenses is in the original agreed divorce decree: "Jay shall bear, and otherwise provide for the funding of, the full costs of all college education expenses of the minor children . . . ." In *Boleware v. Boleware*, 450 So. 2d 92, 92-93 (Miss. 1984), our supreme court dealt with a similar provision in a modified divorce decree. The father in that case contracted to "be responsible for the payment of all college education expenses of the minor children . . . ." *Id*. Similar to the

---

[1]The final judgment states that Jay's "failure to comply with [making his timely payments] shall result in the immediate revocation of suspension of his incarceration . . . ." We note, however, that due process requires that the court hold a hearing prior to revocation of a suspended incarceration. *See Taylor v. Taylor,* 348 So. 2d 1341, 1343 (Miss. 1977).

instant case, the children were under twenty-one when the parties entered into the agreement. *Id*. at 93. The father argued that his obligation ceased when the children reached twenty-one. *Id*. The court disagreed, relying on the chancellor's finding that, at the time of the agreement, the parties intended for the obligation to extend post-majority. *Id*. In *Crow*, the court likewise held that a father's separate agreement to pay for all reasonable college expenses remained in effect post-majority. *Crow*, 622 So. 2d at 1229. And in *Mottley v. Mottley*, 729 So. 2d 1289, 1290 (¶¶4-7) (Miss. 1999), the court referred back to its decision in *Crow* when discerning a father's agreement to pay half of his son's educational expenses; the court ultimately found that the father was bound by contract to pay post-emancipation support.

¶19. The chancellor in the present case ruled as our supreme court did in *Boleware*, *Crow*, and *Mottley*, reasoning that vague college-support provisions have been routinely construed to include post-majority support. Further, Jay's agreement to pay for the children's college expenses was not dependent upon their academic performance. We find no error in the chancellor's ruling.

### 5. Attorney's Fees and Master's Fees

¶20. Jay argues that, since he is unable to pay any attorney's fees, the chancellor erred in ordering him to pay Joy's attorney's fees. Jay raises a similar argument in regard to being ordered to pay a majority of the master's fees. "Determining attorney's fees is a matter within the discretion of the chancellor. This Court is reluctant to disturb a chancellor's decision to award attorney's fees and the amount awarded." *Bounds v. Bounds*, 935 So. 2d

11

407, 412 (¶17) (Miss. Ct. App. 2006) (citation omitted).

¶21.    In contempt actions, attorney's fees are awarded "to make the plaintiff whole." *Rogers v. Rogers*, 662 So. 2d 1111, 1116 (Miss. 1995). "When a party is held in contempt for violating a valid judgment of the court, then attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." *Bounds*, 935 So. 2d at 412 (¶18) (quotation omitted). Joy filed a petition for contempt after Jay failed to comply with the court's December 2012 order. As previously explained, the court was within its discretion to find Jay in contempt. After reviewing the record, we see no reason to disturb the chancellor's award of attorney's fees or the amount awarded to Joy. We further find that the chancellor was within his discretion to order Jay to pay a majority of the master's fees. This argument has no merit.

¶22. **THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR. GRIFFIS, P. J., NOT PARTICIPATING.**