# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00524-COA

**MICHAEL CHADWICK SMITH**                                    **APPELLANT**

**v.**

**KIMBERLY MARIE MULL**                                         **APPELLEE**

DATE OF JUDGMENT:             11/09/2015
TRIAL JUDGE:                  HON. JACQUELINE ESTES MASK
COURT FROM WHICH APPEALED:    LEE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:       JAK MCGEE SMITH
ATTORNEYS FOR APPELLEE:       JASON D. HERRING
                              MICHAEL SPENCER CHAPMAN
NATURE OF THE CASE:           CIVIL - DOMESTIC RELATIONS
DISPOSITION:                  AFFIRMED - 11/07/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., FAIR AND WESTBROOKS, JJ.

### LEE, C.J., FOR THE COURT:

¶1.    Michael Chadwick Smith (Mike) and Kimberly Marie Mull (Kim) married in 2005, and had two children. In 2011, Kim was granted a divorce from Mike on the ground of adultery, and the parties were awarded joint legal custody of the children. This appeal arises from certain provisions contained in the parties' divorce decree. We must decide whether the chancellor erred in (1) denying Mike's request for modification of the visitation-exchange location, (2) finding Mike in contempt of the divorce decree's alcohol provision, and (3) awarding Kim $425 in attorneys' fees. Finding no error, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.    Mike and Kim were married in Kentucky in 2005, where they both worked for the

Toyota automobile-manufacturing company. A plant later opened in Mississippi, and the parties relocated to Tupelo. In 2011, Kim sought a divorce on the ground that Mike had committed adultery—a fact that Mike admitted. Mike countered, seeking a divorce from Kim for habitual cruel and inhuman treatment. Finding Mike's claim without merit, the chancellor denied Mike relief, and granted Kim a divorce. The parties were given joint legal custody of their children, with Kim receiving physical custody and Mike receiving liberal rights of visitation.

¶3. In 2012, Kim and the children relocated near Atlanta, Georgia, which impacted Mike's visitation. As a result, the parties modified their visitation agreement to meet in Leeds, Alabama, a halfway point between Tupelo and Atlanta. Because Mike was often in Kentucky for either work or leisure, he requested that Kim meet him in Chattanooga, Tennessee, and the parties did so for a time. Eventually, however, problems arose with the visitation-exchange location, and the parties could not agree regarding exchanges when Mike was in Kentucky. Mike petitioned the chancery court to modify the exchange location and order Kim to meet him "at the most convenient location for the exchange of the minor children." Kim counterclaimed asserting that Mike was in contempt of the divorce decree after bringing the children to a private neighborhood cookout where others were consuming alcohol.

¶4. The alcohol provision at issue in the divorce judgment ordered: "The parties shall refrain from using alcohol . . . in the presence of the children. Further, the parties shall not allow others, including family members, to conduct such activities in the presence of the

2

minor children." Both parties agreed to this provision in an agreed temporary order, and neither appealed this specific provision in the final judgment following their divorce.

¶5. Following a hearing, the chancellor found that modification of the exchange point was unnecessary based upon the evidence presented. The chancellor further found that Mike had violated the alcohol provision of the divorce decree by having the children in the presence of others using alcohol when he knew beforehand that alcohol would be served. The chancellor awarded Kim attorneys' fees for the contempt complaint against Mike. In response, Mike filed a motion to alter or amend the judgment or for clarification of the chancellor's findings. He argued that the alcohol provision was vague and ambiguous—thus he could not have committed a willful violation resulting in the finding of civil contempt.

¶6. The chancellor found Mike's arguments unpersuasive and upheld her finding of contempt. Per Mike's request, however, the chancellor explained that her ruling comprehended only the use of alcohol at private social gatherings, and did not pertain to events in venues open to the general public. Mike now appeals, arguing that: (1) the chancellor erred in finding that Mike committed willful contempt because the alcohol provision was vague and ambiguous; (2) because Mike did not commit willful contempt, the resulting attorneys' fees are erroneous; and (3) the chancellor erred by declining to modify the exchange location of the parties when Mike is not at his home in Tupelo.

## STANDARD OF REVIEW

¶7. "This Court's scope of review in domestic-relations cases is limited." *Wilson v. Stewart*, 171 So. 3d 522, 526 (¶8) (Miss. Ct. App. 2014) (citation omitted). "We will not

disturb a chancellor's judgment when supported by substantial evidence unless the chancellor abused [her] discretion, was manifestly wrong or clearly erroneous, or applied an erroneous legal standard." *Id*. (internal quotation marks and citation omitted). However, "when reviewing a chancellor's interpretation and application of the law, our standard of review is de novo." *Wilson v. Wilson*, 79 So. 3d 551, 560 (¶37) (Miss. Ct. App. 2012).

## DISCUSSION

### I. Contempt and Attorneys' Fees

¶8. Mike appeals the chancellor's finding that he was in contempt of the divorce decree's alcohol provision. Specifically, he argues the language of the alcohol provision is vague and ambiguous. As a result, he also asserts that there was no basis for the chancellor to award Kim attorneys' fees.

### A. Contempt

¶9. "Contempt matters are committed to the substantial discretion of the trial court[,] which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than are we." *Riley v. Riley*, 196 So. 3d 1159, 1162 (¶9) (Miss. Ct. App. 2016) (quoting *Williamson v. Williamson*, 81 So. 3d 262, 266 (¶11) (Miss. Ct. App. 2012)). "This Court will not reverse a contempt citation where the [chancellor's] findings are supported by substantial credible evidence." *Id*. (quoting *Witters v. Witters*, 864 So. 2d 999, 1004 (¶18) (Miss. Ct. App. 2004)). "The purpose of civil contempt is to enforce or coerce obedience to the orders of the court." *Showers v. Norwood*, 914 So. 2d 758, 761 (¶10) (Miss. Ct. App. 2005). "A citation is proper when 'the contemnor has willfully and

4

deliberately ignored the order of the court.'" *Id.* (quoting *Bredemeier v. Jackson*, 689 So. 2d 770, 777 (Miss. 1997)). "However, if the judgment or decree giving rise to the contempt action is overly vague or nonspecific, a finding of contempt is improper." *Id.* at (¶12).

¶10. Again, in the parties' judgment of divorce, the chancellor ordered, "The parties shall refrain from using alcohol or having unrelated guests of the opposite sex in the presence of the children. Further, the parties shall not allow others, including family members, to conduct such activities in the presence of the minor children." Mike voluntarily agreed to this same provision in an agreed temporary order entered into by the parties. Additionally, Mike did not appeal this provision of the final judgment, or ask the chancellor to alter, amend, or clarify the provision, although he moved to alter or amend other provisions in the final judgment. Now Mike complains of the provision he voluntarily agreed to and declined to appeal.

¶11. Mike admitted that he took the children to a cookout at his friend's house where people were consuming alcohol in the presence of the minor children. He also admitted that Kim had complained to him about the cookout and warned him that this violated the court order—specifically the alcohol provision. Mike further admitted that there were, in fact, a couple of occasions where he took the children to cookouts where people were consuming alcohol. The chancellor, having witnessed the testimony of the parties, found that Mike had willfully violated the court's order by taking his children to a cookout where he knew ahead of time alcohol would be served, or continued at the event with the children after he was aware of the use of alcohol.

5

¶12. Mike argues that the language is so vague and ambiguous that, as worded, it would, for example, disallow him from taking his children to a restaurant where alcohol is consumed. The chancellor, however, noted that Mike's alcohol use was an issue in the divorce proceedings, and the alcohol-restrictive provision was intended "to address the special circumstances developed by the credible proof to serve the best interest of the children[.]" The terms Mike was under court order to abide by were clear and specific—nevertheless, he violated them. Mike's argument that the chancellor's clarification of the provision shows that it was vague or ambiguous is flawed and unpersuasive. The chancellor, at Mike's request, explained what the provision at issue comprehended as applied to the parties and facts in the instant case. Here, the chancellor's clarification of the provision was not due to its ambiguity, but rather, due to Mike's various proposed and hypothetical situations that did not lend themselves in any way to the facts underlying his contempt and ultimately this appeal. The substantial credible evidence shows that Mike willfully violated the court's order. Thus, the chancellor did not abuse her discretion by citing Mike for contempt.

### B. Attorneys' Fees

¶13. "When a party is held in contempt for violating a valid judgment of the court, then attorneys' fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." *Bounds v. Bounds*, 935 So. 2d 407, 412 (¶18) (Miss. Ct. App. 2006). Mike argues that because the contempt citation was erroneous, it was improper for the chancellor to award Kim attorneys' fees for the contempt complaint. "However, since

6

we affirm the chancellor's ruling of contempt . . . , this issue is without merit." *Doyle v. Doyle*, 55 So. 3d 1097, 1114 (¶62) (Miss. Ct. App. 2010).

## II.    Modification of Exchange Location

¶14.    Mike also argues that the chancellor erred in failing to modify the exchange location from Leeds to Chattanooga when he is working or visiting in Kentucky. In doing so, Mike asserts the chancellor "gave no cogent reason" for her decision. We disagree.

¶15.    This Court has articulated the relevant principles regarding modifications of visitation:

> When modification of visitation is at issue, the material change in circumstances test is not applicable because the court is not being asked to modify the permanent custody of the child. To modify a visitation order, it must be shown that the prior decree for reasonable visitation is not working and that a modification is in the best interest of the child. The chancellor has broad discretion to determine the specific times for visitation.

*H.L.S. v. R.S.R.*, 949 So. 2d 794, 798 (¶9) (Miss. Ct. App. 2006) (citations and internal quotation marks omitted). With these principles in mind, we find the chancellor's decision to deny Mike's request for modification was supported by substantial credible evidence.

¶16.    In his motion, Mike sought to have the exchange location modified to "the most convenient location for . . . the minor children." He argued that when he is working or visiting in Kentucky, Chattanooga should be the court-ordered exchange location, as it is a slightly shorter distance (approximately 143 miles) from Kim's home than Leeds (approximately 152 miles). He further argued that the chancellor's failure to modify the exchange location was not in the best interests of the children because it requires approximately 150-160 additional miles per exchange when he is in Kentucky. He alternatively sought to have Kim meet him at a different location so long as it did not exceed

7

the 152 miles that Kim would normally drive from her home. Kim testified that Leeds was "very systematic, very structured, it's what we're used to, we know the safe places, we know all that stuff." Kim also testified that, although Chattanooga may be a shorter overall distance from her home, it took longer to travel there than to Leeds.

¶17. To prevail, Mike needed to show that "the prior decree for reasonable visitation [was] not working and that a modification [was] in the best interest[s] of the child[ren]." *Id.* After hearing testimony from both parties, the chancellor found: "[M]odification of the place of exchange, while perhaps more convenient for [Mike] when he elects to travel out of state, would disturb the children's routines with which they have become comfortable and which complies with the prior decrees." The chancellor further stated: "I don't buy into [Mike's] argument . . . that the court is inconveniencing the children, because, as their father, [Mike] ha[s] to make whatever decision works for [himself] in their best interest[s]." The chancellor ultimately held that Mike failed to show that visitation was not working to serve the best interests of the children. Upon review of the facts before us, we do not find the chancellor erred by declining to modify the visitation-exchange location. This issue is without merit.

¶18. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. TINDELL, J., NOT PARTICIPATING.**

8