# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01438-COA

**REMY JONATHAN BOZANT**                                        **APPELLANT**

**v.**

**HANG M. NGUYEN**                                                      **APPELLEE**

DATE OF JUDGMENT:            10/09/2018
TRIAL JUDGE:                      HON. M. RONALD DOLEAC
COURT FROM WHICH APPEALED:  FORREST COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      MARY LEE HOLMES
ATTORNEY FOR APPELLEE:       WILLIAM BRIAN ATCHISON
NATURE OF THE CASE:          CIVIL - DOMESTIC RELATIONS
DISPOSITION:                 AFFIRMED IN PART; REVERSED AND
                             REMANDED IN PART - 05/26/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., GREENLEE AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     The Chancery Court of Forrest County held Remy Bozant in contempt for failing to pay his ex-wife, Hang M. Nguyen ("Kat"), $35,438.76[1] in accumulated tax debt for the years of 2013, 2014, and 2015 that he owed as a result of their property settlement agreement (PSA) from their divorce on October 6, 2016.  Further, Remy was held in contempt for failing to pay $750 in professional fees for the preparation of the parties' 2015 taxes as set forth in the PSA.  The court also ordered that Remy pay $6,332.14 in attorney's fees for a

---

[1] Remy was inadvertently charged twice for a $750 2015 tax-preparation fee within the contempt judgment: once within the accumulated tax-debt figure and again as a separate contempt amount.

total judgment of $42,511.90.[2] The chancery court ordered Remy to pay the total judgment to Kat by October 1, 2018, or he would be incarcerated.[3] Further, the chancery court dismissed Remy's counter-petition with prejudice and denied all of his post-trial motions. The chancery court held that Remy's post-trial motion regarding an inability to pay was premature and could be addressed in a hearing at a later date should Remy be incarcerated for his failure to pay the contempt judgment. We affirm in part and reverse and remand in part.

## FACTS AND PROCEDURAL HISTORY

¶2. Remy and Kat were divorced on October 6, 2016, by virtue of a final judgment of divorce in the Forrest County Chancery Court. The parties executed a PSA that was incorporated into the final judgment of divorce as Exhibit A. All of the issues in the divorce were resolved by agreement of the parties as reflected in the PSA.

¶3. There are three specific paragraphs of the PSA that are relevant to issues in this appeal. In paragraph E of the PSA, labeled "credit cards and/or accounts," the agreement states as follows:

1. It is agreed that any credit cards or credit accounts held in the parties'
names jointly shall be canceled.
2. The Wife shall be responsible for all of the parties' joint personal credit

---

[2] Given the mistake in computation of the accumulated tax debt, this total judgment amount is inaccurate as well.

[3] The PSA called for Remy to pay his 25% share of the couples' taxes owed directly to the IRS. However, the chancellor's contempt order required that Remy pay his 25% share of the taxes along with the rest of the judgment directly to Kat.

card debt.

3. Wife shall be responsible for paying all of her own personal debts, including but not limited to her student loans.

4. Husband shall be responsible for paying all of his own personal debts, including but not limited to his student loans.

Further, paragraph H of the PSA, labeled "marital debts and taxes," states as follows:

Wife shall be responsible for 75%, and Husband shall be responsible for 25%, of any personal State and Federal income taxes due for the Tax Years 2013, 2014 and 2015. Wife shall be responsible for any unpaid balance due for accountant fees to Wegmann Dazet for preparation of all 2013 and 2014 Income Tax returns. The parties shall each be responsible for 50% of professional fees to Wegmann Dazet for preparation of 2015 personal income tax return, said return shall be filed jointly by the parties. The business shall be wholly responsible for any accountant professional fees and taxes incurred by the business for 2015, and all future business tax years.

Finally, paragraph J of the PSA, labeled "business," states as follows in subparagraph 5:

Wife shall make payments directly to Husband in his name in the amount of $1,000.00 every two weeks for a total of $5,000.00. These payments do not constitute alimony whatsoever, but are only a part of the Property Settlement Agreement entered into between the parties herein. Payments shall begin at Wife's next pay check.

¶4. Kat filed a petition for a citation of contempt against Remy on July 12, 2018, claiming that Remy did not comply with paragraph H of the PSA. More specifically, Kat alleged that Remy failed to pay his 25% share of the debt the couple owed to the Internal Revenue Service (IRS) and Mississippi Department of Revenue (MDOR) for the 2013, 2014 and 2015 tax years. Further, Kat alleged that Remy failed to pay his 50% share of the professional fees owed to a CPA firm named Wegmann Dazet for the preparation of their 2015 tax return. After Kat filed an amended tax return for 2014, it was without dispute that the total amount

3

due for 2013 and 2014 was $96,886.05. Pursuant to the PSA, Remy was responsible to pay 25% of the tax liability, and Kat was required to pay 75%. In an effort to resolve the couple's tax liability for those years, Kat entered into an agreement with the IRS for repayment of the entire amount of taxes owed. The agreement called for Kat to pay $3,000 each month until the tax debt was paid in full. For the 2015 tax year, on October 16, 2017, Kat paid $35,219 to the United States Treasury and $6,650 to the MDOR. Pursuant to the PSA, Remy was responsible for 25% of that tax debt. In addition to paying the entire 2015 tax debt, Kat paid $1,500 to Wegmann Dazet for fees the couple incurred in having the 2015 tax forms prepared. The record reflects that the parties knew the exact amount of tax liability for 2013 and 2014 at the time of their divorce. However, the amount of the 2015 tax liability and the tax-preparation fee was not established until approximately seven months after the date of the divorce.[4] Further, Kat requested in her petition that Remy be ordered to join, by signature, the installment agreement that she entered into with the IRS to ensure that he pay his 25% share of the remaining outstanding tax liability for 2013 and 2014. Finally, Kat requested that Remy be incarcerated until he purged himself of the contempt.

¶5.    Remy filed an answer to the petition for contempt on July 26, 2018 and asserted

---

[4] The record reflects that the actual alleged amount of the contempt should have been 25% and not the original $124,205.86 requested in the petition for contempt. At the hearing on the petition for contempt, Kat's attorney made an ore tenus motion to amend the pleadings to conform to an exhibit that was introduced at trial. The motion was granted, and the erroneous figure from the pleading was amended to reflect a proposed contempt amount of $35,438.76.

4

several defenses in his answer, including recrimination, unclean hands, and a Mississippi Rule of Civil Procedure 12(b)(6) motion to dismiss. In his counter-petition, Remy claimed that Kat was in contempt of paragraph E of the PSA in that she had not paid off and canceled certain accounts she jointly held with him. Further, he claimed that Kat was in contempt of paragraph J of the PSA in that she failed to pay him the $5,000.00 as agreed. Finally, he claimed that Kat was in contempt of paragraph H of the PSA because she failed to pay her entire portion of the 2013 and 2014 tax liability in a timely manner and that as a result of her failure to pay, the parties incurred extensive penalties and interest for which she should be held solely responsible. Remy also argued that he could not be held in contempt for the 2013 and 2014 tax amounts owed to the IRS or MDOR because Kat had not yet paid those debts in full.

¶6.     After a hearing in which Remy represented himself, the chancery court entered a final judgment of contempt on August 27, 2018, finding Remy in willful and contumacious civil contempt. The court held Remy in contempt for failing to comply with paragraph H of the PSA for failing to pay his 25% share of the income taxes for the 2013, 2014 and 2015 tax years in a total amount of $35,438.76. Further, the court held Remy in contempt for failing to pay $750.00 to Kat for his share of the tax preparation fee for 2015. In addition, Remy was ordered to pay $6,332.14 in attorney's fees to Kat as a result of the contempt ruling. Remy was directed to pay the entire monetary judgement of $42,511.90 directly to Kat by paying the sum to the Forest County Chancery Clerk's office on or before October 1, 2018,

5

or he would be incarcerated. The court denied Kat's request to order Remy to sign the IRS payment plan for the 2013 and 2014 tax years. As to Remy's claims in his counter-petition for citation for contempt that Kat failed to pay him $5,000 and failed to pay off and cancel the joint credit card accounts, the chancery court denied and dismissed those claims with prejudice.

¶7.	In accordance with Mississippi Rule of Civil Procedure Rule 59, Remy filed a motion for new trial or consideration of new evidence or, in the alternative, to alter or amend the September 6, 2018 judgment. Kat filed her Answer to Remy's motions on September 13, 2018. Remy filed an additional motion on September 18, 2018, requesting an evidentiary hearing to show his inability to pay the judgment. Kat filed her response to this motion on September 20, 2018. After a hearing on the post-trial motions on October 3, 2018, the chancery court entered an order dismissing all post-trial motions and entered a second judgment of contempt on October 9, 2018.[5] Remy filed his notice of appeal on October 9, 2018.

**STANDARD OF REVIEW**

¶8.	"In domestic-relation cases, our review is limited to whether the chancery court's

---

[5] The order dated October 9, 2018, did not change the findings of contempt; however, it did set a new compliance date for Remy to pay the contempt judgment. The new deadline was set for October 10, 2018. Like the previous order, Remy was ordered to pay the amount he owed to the IRS directly to Kat through the Forrest County Chancery Clerk's office. Further, the chancery court held that Remy's motion regarding an inability to pay was premature and could be heard if and when Remy was incarcerated.

findings were manifestly wrong or clearly erroneous, or the court applied the wrong legal standard." *Gwathney v. Gwathney*, 208 So. 3d 1087, 1088 (¶5) (Miss. Ct. App. 2017). If substantial evidence in the record supports the chancellor's findings of fact, we will not disturb his decision. *Id.* "'Contempt matters are committed to the substantial discretion of the trial court,' and the findings of the chancery court 'will not be disturbed unless manifestly wrong.'" *Hunt v. Hunt*, 289 So. 3d 313, 317 (¶11) (Miss. Ct. App. 2019) (quoting *Gutierrez v. Gutierrez*, 153 So. 3d 703, 713 (¶31) (Miss. 2014)).

## ANALYSIS

### I.    Contempt

¶9.    There is no dispute that Kat paid $1,500 in tax preparation professional fees to Wegmann Dazet for the 2015 tax year. There is no dispute that Remy owed 50% of that professional fee to Kat and failed to pay. This part of the judgment is not an issue on appeal. Further, there is no dispute that Remy has paid nothing toward the tax debt for the 2013, 2014 and 2015 tax years since the date of the divorce. However, Remy raised several defenses within his answer and counter-petition as well as in his testimony at trial as to why he has not made the payments. Kat paid the total amount due on both the State and federal taxes for the 2015 tax year in the amount of $41,869. Further, Kat entered into an agreement with the IRS on April 3, 2018, for the payment of the taxes due for the 2013 and 2014 tax years. Kat is currently making monthly payments toward that debt in the amount of $3,000 per month in compliance with her agreement with the IRS. As part of the PSA, Remy was

7

responsible for 25% of the $41,869.00 Kat has already paid to resolve all taxes owed for 2015. As part of the PSA, Remy is also responsible to pay 25% of the $3,000 per month Kat is paying to the IRS to resolve the tax debt for 2013 and 2014.

¶10. "Civil contempt orders enforce a private party's rights or compel compliance with a court's order." *Hanshaw v. Hanshaw*, 55 So. 3d 143, 147 (¶13) (Miss. 2011). "Failure to comply with a court order is prima facie evidence of contempt." *Evans v. Evans*, 75 So. 3d 1083, 1087 (¶14) (Miss. Ct. App. 2011). "A contempt citation is proper only when the contemner has wilfully and deliberately ignored the order of the court." *Lewis v. Pagel*, 172 So. 3d 162, 178 (¶39) (Miss. 2015) (quoting *Gaiennie v. McMillin*, 138 So. 3d 131, 136 (¶13) (Miss. 2014)). Further, "[t]his Court will not reverse a contempt citation where the chancellor's findings are supported by substantial credible evidence." *Witters v. Witters*, 864 So. 2d 999, 1004 (¶18) (Miss. Ct. App. 2004) (citing *Varner v. Varner*, 666 So. 2d 493, 496 (Miss. 1995)).

### A. Doctrine of Contribution

¶11. While Remy did not specifically use the term "contribution" in his pleadings, he did argue at trial that because Kat had not yet paid the total tax debt owed by the parties to the IRS for 2013 and 2014, she could not seek contribution for that debt. Further, he argued that Kat had not yet paid to the IRS her total 75% share that she owed for the 2013 and 2014 debts and that until the amount due was paid, she has not incurred any debt for which she can seek contribution from him.

8

¶12.    In *Celotex Corp. v. Campbell Roofing & Metal Works Inc*, 352 So. 2d 1316, 1318

(Miss. 1977), the supreme court held:

> The doctrine of contribution requires that persons having a common liability,
> such as the joint and several judgment against Campbell and Celotex, bear
> their individual share of the burden imposed and not have any one of them
> **carry the full load**. The general rule of common law is that the one who is
> compelled to satisfy, or pay more than his just share of such common burden
> or obligation, is entitled to contribution from the others to obtain from them
> payment of their respective shares.

(Emphasis added). The chancery court held Remy in contempt for his failure to pay to the

IRS his 25% of the total tax liability for 2013 and 2014 and ordered him to pay his 25%

amount owed directly to Kat, despite the fact that she had not yet paid that portion to the IRS.

Although Kat is making payments to the IRS to satisfy the couple's previous tax liabilities

for 2013 and 2014, she has not yet carried "the full load" of the obligation. To order Remy

to pay Kat his entire 25% portion of tax debt for 2013 and 2014 would hold Remy in

contempt for nonpayment for a debt that Kat has not paid. Kat may make such payments on

his behalf at some point in the future, but that had not yet happened at the time of the

contempt order. A person cannot be held in contempt by a court for some future violation

of a court order that has not yet happened, regardless of the likelihood of such future

violation. "The primary purpose of a civil-contempt order is to enforce compliance with a

court order." *Chism v. Chism*, 285 So. 3d 656, 666 (¶35) (Miss. Ct. App. 2019) (citing

*Stallings v. Allen*, 201 So. 3d 500, 504 (¶14) (Miss. Ct. App. 2016)), *cert. denied*, 284 So.

3d 753 (Miss. 2019). If Remy paid the IRS his 25% share during the time Kat was paying

9

the portion she owed, then he would not owe Kat anything, and Kat would have paid nothing extra than what she owed. If, on the other hand, Remy did not pay the debt he owed to the IRS and Kat had paid her portion and then his portion, then Kat would certainly have a right to seek payment for the 25% he failed to pay and that she was forced to pay. While it is true Kat entered into an agreement with the IRS to pay the entire debt, she is responsible for 75% of that debt and was still paying her share of the debt when she filed her contempt petition. The chancery court's contempt order anticipated Remy's failure to comply with the PSA as to the years 2013 and 2014, and the court may very well be correct at some point in the future. But until such time as Kat has been required to actually pay the portion of the debt Remy owes, she cannot seek contribution. When she has been forced to pay Remy's debt or to "carry the full load" of the couple's joint debt, then she can seek contempt for Remy's failure to pay. We reverse and remand that part of the judgment holding Remy in contempt for his 25% portion of the 2013 and 2014 taxes because Kat had not yet paid that amount to the IRS at the time of the contempt order. Remy cannot be in violation of the PSA for his failure to pay when he had not yet failed to pay.

¶13. Turning to the 2015 taxes, the evidence is uncontradicted that Kat paid the full amount of the parties' 2015 tax obligation as well as the tax-preparation professional fee. The PSA required that Remy pay 25% of the 2015 tax debt and 50% of the tax-preparation fee. Kat carried "the full load" of the tax liability for 2015 and the tax-preparation fee. Remy failed to pay his 25% portion of the 2015 tax debt owed and the tax-preparation fee, and his failure

to comply caused Kat to pay his share. Thus, the chancery court correctly held Remy in contempt for his failure to pay 25% of the 2015 tax debt and 50% of the tax-preparation fee and correctly held that Remy should pay those amounts directly to Kat. We affirm the chancery court's decision as to the 2015 tax debt and tax-preparation fees in the amount of $11,217.25.

### B. Remy's Alleged Inability to Pay

¶14. Remy testified at trial that he was unable to afford an attorney for the contempt hearing and unable to make any payments toward the tax debt and professional fees associated with tax preparation. Remy filed personal bankruptcy on February 21, 2017, over four months after the parties' divorce was final. There was no evidence in the record that would indicate Remy made any payments on the tax debt during or after this four-month time period. While Remy claimed he was unable to make any monthly payments toward his debt after the divorce, he testified at trial that he had recently purchased a GMC Sierra with a monthly note of $572. Further, he testified that the insurance on his new truck was $335 per month and that the gas was approximately $400 per month. Remy further testified that he spent approximately $60 per month for internet access and gambled at the casinos every two-to-three weeks, spending a few hundred dollars per trip. During this time, Remy also chose to go back to school and incurred additional student loan debt.

¶15. "A defendant may avoid a judgment of contempt by establishing that he is without the present ability to discharge his obligations. However, if the contemnor raises inability to pay

11

as a defense, the burden is on him to show this with particularity, not just in general terms."

*Varner*, 666 So. 2d at 496 (citation omitted). In its ruling, the chancery court stated as follows:

> [t]he Court finds that his lifestyle is somewhat over the top with respect to his testimony about his income. $572 a month for a vehicle, $335 a month for car insurance, $400 a month for gas and those types of things. The Court does not - - the Court finds that Mr. Bozant has failed to establish an affirmative defense that rises to the level of clear and convincing evidence as to his inability to pay.

There was sufficient evidence to support the chancery court's findings that Remy's inability-to-pay defense was not supported by the evidence, and those findings were not manifestly wrong or clearly erroneous. We find no error.

### C. Unclean Hands

¶16. Remy claimed that Kat's requested relief should be denied because she had unclean hands concerning the allegations in his counter-petition for citation of contempt. More specifically, he alleged that Kat failed to pay her 75% portion of the tax debt and that her failure to do so in a timely fashion caused the parties to incur additional interest and penalties. Further, Remy claimed that Kat was in contempt for failing to pay off and cancel the jointly held credit card debt, as required in paragraph E of the PSA, and for failing to pay him $5,000, as required in paragraph J of the PSA. The record reflects that Kat paid the 2015 tax debt in full and has been in a payment plan since May 2018 for the debt owed for 2013 and 2014 taxes. Kat testified at trial that she paid Remy $5,000 in cash approximately one month prior to the entry of the PSA to satisfy her obligation under paragraph J of the PSA.

12

The check that Kat cashed to pay Remy was written on September 23, 2016, and it was entered into evidence as Exhibit 5. Kat also testified that she tried to cancel the jointly held credit card account but was unable to do so because it had a balance, and she was unable to pay it off because it was "tied up" in Remy's bankruptcy filing. Every month, Kat pays $3,000 toward the couple's tax liability, while Remy does not pay anything. Kat testified at trial that the IRS now holds a lien against her home to secure the debt; however, Remy claims Kat has unclean hands.

¶17. "The doctrine of unclean hands provides that 'he who comes into equity must come in with clean hands.'" *Hayes v. Hayes*, 281 So. 3d 1002, 1010 (¶32) (Miss. Ct. App. 2019) (quoting *In re Estate of Richardson*, 903 So. 2d 51, 55 (¶15) (Miss. 2005)). "A chancellor does not have to hold a party in contempt even if he or she technically violated the law." *Id*. at 1010 (¶18) (quoting *Riddick v. Riddick*, 906 So. 2d 813, 824 (¶37) (Miss. Ct. App. 2004)). While Kat has not yet paid her entire portion of the tax debt in full, the chancery court acknowledged the affirmative steps Kat took to provide for the payment of the entire debt owed and that the monthly payments she was making included what Remy owed to the IRS. The court dismissed with prejudice Remy's claims that Kat was in contempt for failing to pay off and cancel the jointly held credit card debt, as required in paragraph E of the PSA, and for failing to pay him $5,000, as required in paragraph J of the PSA. As to the defense of unclean hands, the court stated as follows:

> The Court finds that Mr. Bozant has failed to present any affirmative defense recognized by law such as inability to pay, vague or unspecific order or any

13

violation of any clean hands doctrine, or that his conduct does not rise to the level of being willful, given that he has not paid on anything on his tax obligation as agreed and ordered by the Court since the divorce judgment date in the fall of 2016.

There was sufficient evidence to support the chancery court's findings and decision overruling Remy's unclean-hands defense, and those findings were not manifestly wrong or clearly erroneous. We find no error.

## II.  Ambiguity of the PSA

¶18.  Remy failed to set forth the argument concerning an ambiguity of the PSA in his chancery court pleadings or in his testimony at trial; instead, he raises it for the first time on appeal. "In *Southern v. Mississippi State Hosp.*, 853 So. 2d 1212, 1214-15 (Miss. 2003), we reiterated the important procedural tenet that '[a] trial judge cannot be put in error on a matter not presented to him.'" *Chantey Music Pub. Inc. v. Malaco Inc.*, 915 So. 2d 1052, 1060 (¶28) (Miss. 2005). "Precedent mandates that this Court not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs. *Id.* (citing *Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 730 (Miss. 1973)). Because Remy failed to set forth this argument at trial, this issue is waived and procedurally barred on appeal.

## III.  Attorney's Fees

¶19.  The chancery court awarded Kat $6,332.14 in attorney's fees as a result of the contempt action. Remy argues on appeal that even if this Court should affirm the chancery court's order, this Court should reverse as to the amount of attorney's fees awarded.

14

"Attorney's fees are awarded to make the plaintiff whole in contempt actions." *Riley v. Riley*, 196 So. 3d 1159, 1163 (¶19) (Miss. Ct. App. 2016) (citing *Wilson v. Stewart*, 171 So. 3d 522, 529 (¶21) (Miss. Ct. App. 2014)). "When a party is held in contempt for violating a valid judgment of the court, then attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." *Wilson*, 171 So. 3d at 529 (¶21) (quoting *Bounds v. Bounds*, 935 So. 2d 407, 412 (¶18) (Miss. Ct. App. 2006)). While this Court holds that parts of the contempt judgment should be reversed, the evidence was uncontradicted at trial that Remy had paid nothing in relation to the 2015 debt or the 2015 tax-preparation fee and that Kat had paid 100% of both. As such, Remy was found in contempt for failing to comply with an order of the court. The court in this case held:

> With respect to the attorney fee request brought by Ms. Nguyen that is in evidence as Exhibit 7 by way of itemization, the Court has considered the itemization, which is essentially unopposed at trial, other than Mr. Bozant's position that he objects to paying any attorney's fees for Ms. Nguyen.
>
> The Court has also considered Mississippi Code Annotated, Section 9-1-41, with respect to the Court having some discretion to review legal work done by counsel for parties and to sue the - - draw from the Court's experience as to the reasonableness of the fees charged and the necessity of the work performed. Again, there being no objection to that, the Court finds that the fees are reasonable, particularly given the $175 per hour rate and the $75 per hour rate for paralegals.
>
> The Court finds that, therefore, the requested fee amount of $6,332.14 is reasonable and necessary and was incurred by Ms. Nguyen because of Mr. Bozant's civil contempt of court in that he has willfully and deliberately failed to abide by his 25 percent payment obligation of the tax liability of the parties. Therefore, the Court finds that Ms. Nguyen's petition for citation for contempt is sustained and granted, that she has met her burden of proof.

15

In the ruling, the court referenced the trial exhibit on which the court relied as well as the applicable law giving it discretion in the awarding of attorney's fees. The court found that the hourly rates charged by the attorney and paralegal were reasonable and necessary as a result of Remy's contempt. Therefore, the chancery court's award of reasonable attorney's fees to Kat that were incurred as a result of the contempt action is affirmed.

## CONCLUSION

¶20.    The court found that Remy is in contempt for failing to pay his 25% portion of the tax debt due for the 2015 tax year as well as the tax preparation professional fees associated with the 2015 taxes, and we affirm this decision. Further, the chancery court entered the judgment of attorney's fees associated with the finding of contempt, and we affirm this judgment. However, the chancery court erred in holding Remy in contempt for his failure to pay his 25% portion of the tax debt due for the 2013 and 2014 tax years because it had not yet been paid by Kat at the time of the contempt order. We therefore reverse and remand for further proceedings consistent with this opinion.

¶21.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR.**

16